# No. 25-1542

————————————

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

————————————

**JODI ROUVIERE, individually,**

*Plaintiff-Appellant,*

*v.*

**HOWMEDICA OSTEONICS CORP., D/B/A STRYKER ORTHOPAEDICS,**

**DEPUY ORTHOPAEDICS, INC.,**

*Defendants-Appellees*

————————————

Appeal from the United States District Court for the
Southern District of New York
Hon. Gregory Howard Woods, District Judge
Case No. 18-cv-4814

————————————

## APPELLANT JODI ROUVIERE'S RESPONSE IN OPPOSITION TO
## APPELLEES' JOINT MOTION FOR SUMMARY AFFIRMANCE
## AND/OR DISMISSAL OF APPEAL AND
## MEMORANDUM OF LAW IN SUPPORT THEREOF

————————————

Dated: September 22, 2025

*//ss// Jodi Rouviere*
Jodi Rouviere
10950 Southwest 84th Court
Miami, FL 33156-3526
(305)608-8076
jodi.jtm@gmail.com
*Appearing Pro se*

# **TABLE OF CONTENTS**

**Page**

I.   **PRELIMINARY STATEMENT**.......................................................1

II.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY** ...7

   A. Early Procedural History.......................................................7

   B. Summary Judgment .............................................................9

   C. Second Circuit Summary Affirmance; A Closed Mandate .................10

   D. Rule 60(b)(6) and Evidentiary Hearing ..............................11

   E. The District Court's Rule 60(b)(6) Opinion and Order ......................12

   F.  Upcoming Appeal on Woods' Order; Attempt to Foreclose Review....14

III. **ARGUMENT** .....................................................................15

   A. The New Appeal Will Present Substantial, Non-Frivolous Issues.........15

   B. De Novo Review Cannot Cure Conflicts................................................16

   C. Judge Raggi's Conflict Was Real, Not "Fanciful" ................................16

   D. The Falsified Record Shows Conflicts Acknowledged by Reassignment, Not "Recusal" ........................................................................17

   E. Defense Misconduct Compounded Judicial Misconduct ........................18

   F.  Woods' § 1915 Certification Was Ultra Vires ..........................................19

   G. The Abuse-of-Process Charge Is Projection .............................................19

IV. **STANDARD OF REVIEW**..............................................................20

    A. Jurisdiction and Structural Error ...............................................20

    B. Appellees' Cited Authorities Are Inapposite .............................21

    C. Efficiency Arguments Cannot Trump Integrity..........................22

V. **DISMISSAL WOULD ENTRENCH FRAUD: THIS APPEAL DEMANDS MERITS REVIEW** ..........................................................................23

VI. **CONCLUSION** ........................................................................24

**CERTIFICATE OF COMPLIANCE**………………………………….25

**CERTIFICATE OF SERVICE**……………………………………………26

**EXHIBIT 1:** Ethicon/J&J Conflict Letter (2-25-2022)…………………..…27

**EXHIBIT 2:** *New York Times* Investigation of Judge Liman (3-1-2022)……..…32

**EXHIBIT 3:** New Financial Disclosure Judge Liman showing J&J Stock Sale (3-17-2025)……………..……………..…………………………40

## TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Ackermann v. United States*, 340 U.S. 193 (1950) .........................................22

*Anders v. California*, 386 U.S. 738 (1967) ...........................................21,22,23

*Ben Zvi v. United States*, 242 F.3d 89 (2d Cir. 2001).....................................22

*Bowles v. Russell*, 551 U.S. 205 (2007) ...........................................................6

*Browder v. Director, Department of Corrections*, 434 U.S. 257 (1978) ..6, 20, 22

*Coppedge v. United States*, 369 U.S. 438 (1962) .................................... passim

*Der-Rong Chour v. INS*, 578 F.2d 464 (2d Cir. 1978) ......................................19

*ExxonMobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th 163 (2d Cir. 2022),

    cert. dismissed, 143 S. Ct. 480 (2022) .................................................16, 21

*Fishon v. Peloton Interactive, Inc.,* 620 F.Supp. 3d 80 (S.D.N.Y. 2022)............18

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982) .........6. 16, 20

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) ........ passim

*In re Murchison*, 349 U.S. 133 (1955) ....................................................... passim

*Kupferman v. Consol. Research & amp; Mfg. Corp.,*

    *459 F.2d 1072, 1078 (2d Cir. 1972)*......................................................... 23

*Johnson v. United States*, 352 U.S. 565 (1957) ............................................ passim

*Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988) .........passim

*Neitzke v. Williams*, 490 U.S. 319 (1989) .........................................................22

*Nguyen v. United States*, 539 U.S. 69 (2003) ...............................................*passim*

*Pillay v. INS*, 45 F.3d 14 (2d Cir. 1995) .........................................................21, 22

*Standard Oil Co. v. United States*, 429 U.S. 17 (1976) ............................. *passim*

*Tennessee v. Lane*, 541 U.S. 509 (2004) ...............................................................8

*United States v. Monsalve*, 388 F.3d 71 (2d Cir. 2004) ........................................21

*United States v. Torres*, 129 F.3d 710 (2d Cir. 1997) ........................................21, 22

*Williams v. Pennsylvania*, 579 U.S. 1 (2016) ................................................... *passim*

## Statutes

28 U.S.C. § 1291 .......................................................................................*passim*

28 U.S.C. § 455 ...................................................................................... *passim*

28 U.S.C. § 1915(a)(3) ............................................................................ *passim*

CPLR § 214-c(2) ..................................................................................... *passim*

29 U.S.C. § 794 (§ 504 of the Rehabilitation Act) ......................................*passim*

## Other Authorities

Fed. R. Civ. P. 60(b)(6) ............................................................................ *passim*

Fed. R. App. P. 3(c)(4) ............................................................................. *passim*

Fed. R. App. P. 4(a)(1)(A) ...............................................................................6

Fed. R. App. P. 32(f)..................................................................................25

Judicial Conference Advisory Opinion No. 106 .......................................... *passim*

# I.  <u>PRELIMINARY STATEMENT</u>

Appellees' motion rests on two false premises: that this is a "second appeal" and that it is "frivolous." Neither withstands scrutiny. This is the first and only appeal from Judge Woods' June 12, 2025, order (Dkt-396)[1], noticed on June 17, 2025, denying Plaintiff's Rule 60(b)(6) motion.

This appeal exposes a record poisoned by undisclosed conflicts, a falsified "recusal" narrative, suppressed discovery, and disability discrimination, capped by Woods' retaliatory § 1915(a)(3) strike against a pro se litigant branding this paid appeal "frivolous." § 1915 governs only in forma pauperis fee waivers. Appellant paid every filing fee. Woods inserted it anyway, not as law, but as a rhetorical device to poison this appeal as 'frivolous' before review."

The prior 2022–24 appeal covered only summary-judgment rulings (Dkts-318, 351), entered while Judges Liman and Aaron were financially entangled with DePuy and before Raggi's Stryker conflict surfaced. A mandate cannot sanitize concealed defects.

Plaintiff's claims arose from latent metallosis diagnosed intraoperatively November 11, 2016; suit was filed in 2018, well within three years. The District

---

[1] Unless otherwise specified, all "Dkt-. __" citations refer to the District Court docket, S.D.N.Y. No. 18-cv-04814.

Court collapsed unrelated spinal symptoms into metallosis discovery to bar claims, weaponizing disability in violation of § 504.

Plaintiff's effort to obtain impartial adjudication generated over 400 docket entries. Aaron restricted discovery; Liman then declared the record "undisputed" and misapplied CPLR § 214‑c(2), triggering the statute based on symptoms of an unrelated neck disability, not the discovery of metallosis injury. On appeal, Raggi's undisclosed Seyfarth/Stryker conflict compounded the taint. A conflicted appellate panel affirmed dismissal without knowledge of conflicts.

Defense misconduct saturated the record. DePuy mishandled Plaintiff's explant, submitted misleading photos, and escaped sanctions. (Dkt-83) Stryker's counsel illegally withheld metallosis pathology in violation of HIPAA and Fla. Stat. § 395.3025; sanctions denied. (Dkt-296 p 18) Aaron excused DePuy's misrepresentations about a conflicted expert already disqualified for the same tie with Stryker. (Dkt-266) Plaintiff was forced to retain two experts; both precluded from offering causation analysis of the combined metal impingement that produced metallosis, a suppression of probative testimony that manufactured the false "undisputed" record.

Appellees' "cure-by-affirmance" theory fails. Prior affirmance came before three judges' financial conflicts were revealed; Appellees first disclosed Judge

Raggi's entanglement with Stryker. This appeal is the first chance to confront both layers of taint, conflicts in the district and appellate courts. The remedy is vacatur. Structural conflicts cannot be washed away after the fact, and affirmance by a conflicted panel multiplies error instead of curing it.

Woods' entrenched misconduct by mislabeling reassignment "Recusal," falsifying the docket, and misusing § 1915(a)(3) to brand this paid appeal "not in good faith." That statute governs fee waivers, not jurisdiction. Additionally, only this Court, not the conflicted judge under review, may decide frivolousness. Woods inverted appellate access: it protects review; it does not let trial judges block it. No judge may sit in judgment of their own conflict.

Appellees cite irrelevant prisoner-screening and insurance cases while ignoring controlling law on Rule 60(b), recusal, and fraud on the court. Plaintiff seeks review of Woods' refusal to vacate judgments tainted by disqualified judges, including accrual law under CPLR § 214-c(2) rewritten by a conflicted judge to extinguish claims, and affirmance by a conflicted panel. Structural error demands vacatur.

The conflicts were direct and disqualifying.

Judge Liman presided while personally holding J&J stock, drawing $15,001–$50,000 annually (2020–23) and selling $100,001–$250,000 in March

2025 while Plaintiff's Rule 60(b)(6) motion was pending. In 2022, he disclosed his wife's J&J holdings in *Reiss v. Ethicon*, following a *Wall Street Journal* investigation, but never his own here.

That same month, he convened a status conference advancing Stryker's limitations motion and then ruled that Plaintiff had "discovered" metallosis through unrelated spinal disability symptoms. This not only misapplied CPLR § 214-c(2), which tolls accrual until actual injury discovery, but weaponized disability to extinguish the claims, in violation of § 504 of the Rehabilitation Act. Plaintiff appealed, but the 2024 mandate left those rulings intact, without knowing they were issued under undisclosed conflict. The Second Circuit vacated Liman's conflicted rulings in *Litovich v. Bank of America Corp.*, No. 21-2905 (2024). Section 455 applies equally here for corporate litigants and a pro se litigant.

Judge Aaron suppressed discovery while drawing $168,723 a year from Arnold & Porter in "partnership" payouts, while A&P was representing J&J in federal litigation, including MDL 2738. While financially entangled, Aaron limited discovery, manufacturing the "undisputed" record Liman invoked at summary judgment. Judge Raggi's household received partnership income from Seyfarth Shaw while that firm represented Stryker in active litigation.

Even one undisclosed conflict mandates vacatur; here, there were three, plus a fourth. After Plaintiff exposed them in her Rule 60(b)(6) motion, Liman and Aaron were reassigned on November 7, 2024, confirming § 455(a)'s appearance standard. Judge Gregory H. Woods was then assigned.

Plaintiff's Rule 60(b)(6) motion sought vacatur of conflicted judgments. Woods' refused, hiding behind an earlier appeal decided before conflicts surfaced. He admitted Liman should have been recused, yet, over fifty times, mislabeled administrative reassignment as "**recusal**," **despite no § 455 order,** falsifying the docket to evade mandatory vacatur. His order shielded colleagues, not the statute.

Appellees' posture is internally inconsistent and legally foreclosed. They invoke Woods' "recusal" label while denying the vacatur it mandates, minimize Aaron's conflict even though he was reassigned with Liman, and insist no remedy is due. That triad, recusal without vacatur, ignorance without conflict, and entrenchment without remedy, exposes bad faith of their motion. Administrative reassignment is not statutory recusal; mislabeling it was designed to evade vacatur.

Only Dkt-396 is before this Court. Issues include (preview): (1) Denial of Rule 60(b)(6) relief (Dkt-396) is a final, independently appealable judgment; (2) § 1915(a)(3) certification irrelevant and exceeded authority; (3) Dkt-396 requires vacatur; (4) Relabeling reassignment as "recusal" was fraud on the court; (5)

Reassignment confirmed § 455(a)'s appearance violation; (6) Financial conflicts mandated disqualification; (7) Discovery suppression manufactured fraudulent "undisputed" record; (8) Defense misconduct compounded errors; and (9) Appellate review of other orders could not cure conflicts revealed after judgment.

Plaintiff filed a timely Notice of Appeal on June 17, 2025 (Dkt-397), designating Dkt-396. FRAP 4(a)(1)(A) secures timeliness. *Bowles v. Russell*, 551 U.S. 205, 213 (2007). FRAP 3(c)(4) is explicit: an appeal "encompasses only the judgment or order designated." *Standard Oil Co. v. United States*, 429 U.S. 17, 18–19 (1976), establishes denial of Rule 60(b) relief is an independently appealable final judgment under 28 U.S.C. § 1291. *Browder v. Dir., Dep't of Corr.*, 434 U.S. 257, 263 n.7 (1978). Jurisdiction flows from notice, not speculation. *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).

Seven years of litigation are the product of Appellees' concealment and conflicted judges who falsified the record. Their fraud dragged this case through 400 entries, biased orders, and poisoned appeal. The courts' integrity, not Appellees' convenience, is what matters here. They admit recusal was warranted yet deny the only remedy that sustains the law's legitimacy.

To let these conflicts stand would teach contempt for law itself. Fraud on the court demands correction. This Court should deny Appellees' motion and proceed to a full merits review of Dkt-396.[2]

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Early Procedural History

Appellant Jodi Rouviere filed this action on May 31, 2018, against DePuy Orthopaedics, Inc. ("DePuy") and Howmedica Osteonics Corp. ("HOC"), which owns Stryker. Dkt-1 (Compl.). DePuy is a wholly owned subsidiary of J&J.

Rouviere underwent a hip replacement in August 2012 that combined components manufactured by both Appellees. Dkt-26 (Am. Compl.) ¶¶ 6 & 11. On November 11, 2016, during open surgery, her surgeon diagnosed metallosis surrounding the combined components. Dkt-26 (Am. Compl.) ¶¶ 6 & 11.

This Court previously recognized, in the earlier appeal, that metallosis is latent and discovered intraoperatively, not through prior nonspecific symptoms. Appellate Dkt-277.

---

[2] As a pro se litigant, Plaintiff's filings are entitled to liberal construction under controlling precedent. See *Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007).*

Rouviere filed suit in 2018, less than two years after metallosis' diagnosis (Dkt-1), alleging design and manufacturing defects, failure to warn, and regulatory misconduct. Dkt-26.

Under CPLR § 214-c(2), accrual runs from injury discovery. The November 11, 2016, intraoperative finding was the first discovery of metallosis.

On June 5, 2018, the case was assigned to Magistrate Judge Stewart Aaron. Dkt-4. In February 2020, it was reassigned to District Judge Lewis Liman. Dkt-45, 46, 52; Feb. 6, 2020 Minute Entry.

While presiding, Judge Liman personally held J&J stock, drawing $15,001–$50,000 annually (2020–23) and selling $100,001–$250,000 while the 60(b)(6) motion was pending. (Dkt-396, Ex-3) He disclosed his wife's J&J holdings in *Reiss v. Ethicon* (Feb. 25, 2022) after a *Wall Street Journal* investigation, but never his own here. *See* Ex-1, 2.

Instead, he immediately convened a status conference to advance Stryker's limitations motion, ruling against the record evidence of the November 2016 metallosis discovery (Dkt-185 at 11). Plaintiff "discovered" metallosis through unrelated spinal disability symptoms years earlier. The 2018 filing was timely. His ruling misapplied CPLR § 214-c(2), which tolls accrual until discovery of injury, not unrelated symptoms, weaponizing spinal disability to extinguish claims.

Plaintiff appealed, but the Second Circuit's 2024 mandate left those rulings intact, without knowing they had been imposed under undisclosed financial conflict. As a disabled litigant, Plaintiff was entitled to equal access under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, applied with the ADA, and the Judiciary's accommodation policy. Courts may not treat disability as adverse evidence. *Tennessee v. Lane*, 541 U.S. 509, 532 (2004), confirms disabled litigants' right to meaningful access. Denying access here, while concealing financial conflicts, compounded structural error with disability discrimination.

## B. Summary Judgment

On September 17, 2021, Judge Liman, whom Appellees and Woods now call "**Recused Judge**," **despite no § 455 order**, granted DePuy summary judgment. Dkt-318. After Aaron manufactured a causation void. Reconsideration (Dkt-325) was denied. One cannot admit recusal yet retain rulings; under § 455 and *Liljeberg v. Health Servs. Acquisition Corp*., 486 U.S. 847 (1988) conflicted rulings do not survive. Repeatedly calling Liman "Recused Judge" is an admission that vacatur is mandatory, not optional.

On Dec. 5, 2022, Liman granted HOC summary judgment on limitations (Dkts-351, 352), extending that ruling to DePuy, creating a second shield. Both Appellees were infected by undisclosed financial conflicts and legal errors.

Appellees argue "HOC was the only defendant," but Liman's J&J stock disqualified him regardless (Advisory Op. 106). Timing does not sanitize violation: § 455 disqualification is triggered by the existence of the interest, not the case caption. To argue otherwise is to suggest a conflicted judge may cure misconduct by dismissing one defendant while keeping another under the same tainted umbrella, a proposition the statute forbids.

Appellees' reliance on a "Recused Judge" to preserve both layers of protection only confirms vacatur is mandatory.

### C. Second Circuit Summary Affirmance; A Closed Mandate

In December 2022 and January 2023, Plaintiff appealed Liman's summary judgment orders. *Rouviere v. Howmedica, et al.*, No. 22-3205 (L), 23-50 (CON). That appeal was briefed and argued without disclosure of conflicts. On April 5, 2024, this Court affirmed dismissal on statute-of-limitations grounds. Dkt-363, relying on a poisoned record, suppressed discovery, and struck experts, manufactured the "undisputed" void. Dkt-351.

What Appellees call a "cure" was a multiplier. Raggi sat on the affirming panel while her household received Seyfarth Shaw partnership income, concurrently representing Stryker in *ORP Surgical*, a fact disclosed by Appellees in their Rule 60 opposition (Dkt-46 at 15). Under § 455(d)(4), spousal partnership

income is the judge's own. Affirmance by a conflicted panel compounds, not cures, the taint. Structural conflicts defy harmless error and require vacatur.

The law is consistent: a mandate cannot bless what the record concealed. This Court's vacatur of Liman's rulings in *Litovich v. Bank of America,* No. 21-2905 (2024), applies equally here: nondisclosure mandates vacatur regardless of outcome. Once Liman's recusal was admitted, preserving his judgments was a contradiction.

Defense misconduct compounded the violations. DePuy's counsel mishandled Plaintiff's explant, submitted misleading photos, and falsely blamed her. Dkt-83. Stryker's counsel obtained and withheld metallosis pathology in violation of HIPAA and Fla. Stat. § 395.3025 (Dkt-296). Aaron denied sanctions. Dkt-296. Together with judicial suppression, these tactics manufactured the false "undisputed" record relied on, even though questions of material fact remained.

Appellees now argue that DePuy and Stryker stand apart, though they litigated side by side, this motion included. Liman's limitations ruling (Dkt-351) covered both, giving them a shared shield. When one ruling is tainted, both are infected.

### D. Rule 60(b)(6) and Evidentiary Hearing

In October 2024, Plaintiff moved for vacatur under Rule 60(b)(6) (Dkt-364) and for an evidentiary hearing (Dkt-373) based on newly surfaced conflicts: Liman held J&J stock while ruling for its subsidiary DePuy, and Aaron received fixed $168,723 annual partnership payments from Arnold & Porter while they represented J&J (including MDL 2738). In Appellees' opposition, Plaintiff learned of a third conflict: Judge Raggi's household received partnership income from Seyfarth Shaw while they represented Stryker in *ORP Surgical, LLC v. Howmedica Osteonics Corp.*, No. 22-1430 (10th Cir. 2024) (see Dkt-46 at 15). Appellees' "cure-by-separation" fails: undisclosed financial conflicts cannot be waived, 28 U.S.C. § 455(e), and require recusal and vacatur. *Liljeberg*, 486 U.S. 847.

These conflicts were not speculative. Appellees and Woods concede Liman should have been recused (while mislabeling reassignment as "recusal"). § 455(d)(4) treats spousal partnership income as the judge's own, bringing both Aaron's and Raggi's entanglements within the statute. Each undisclosed conflict independently mandated recusal; together, they compounded the taint.

Section 455 imposes a continuing duty of disclosure. By concealing disqualifying interests, Liman, Aaron, and Raggi deprived Plaintiff of any chance to seek recusal, heightening the need for vacatur.

The Rule 60(b)(6) motion sought vacatur of conflicted orders, including Liman's CPLR § 214-c(2) distortion and Aaron's fourteen discovery preclusions (Dkt-364 at 2–3) that manufactured the false "undisputed" record, and detailed defense misconduct (explant mishandling; unlawful withholding of metallosis pathology).

Within days, on November 7, 2024, Liman and Aaron were reassigned, confirming § 455(a)'s appearance-of-impropriety violation.

### E. The District Court's Rule 60(b)(6) Opinion and Order

On June 12, 2025, Woods denied Rule 60(b)(6) relief (Dkt-396). Rather than apply § 455's appearance standard confirmed by the reassignment of Liman and Aaron, Woods rewrote the record. He repeatedly mislabeled only Liman's reassignment, referring to him as "Recused Judge" more than fifty times (See Dkt-396) despite no § 455 order, while rejecting that Aaron was conflicted, even though he was reassigned alongside Liman, which falsified the docket and evaded § 455's mandatory consequence: vacatur.

Woods engaged in a pattern of institutional cover-up. He speculated Liman "may not have known" his J&J conflict (See Dkt-396 at 18 n.5.), though § 455(b)(4) makes knowledge irrelevant and Defendants' Rule 26.1 disclosure (Dkt-38) identified DePuy as a J&J subsidiary; Advisory Op. 106 confirms even a

single share mandates recusal.[3] He excused Aaron's $168,723 in annual payments from Arnold & Porter as "too remote," despite the firm's active J&J litigation (MDL 2738) and Aaron's reassignment alongside Liman, which proved the conflict real.[4] Finally, he brushed off Raggi's household income from Seyfarth Shaw, disclosed by DePuy itself (Dkt-46 at 15), then representing Stryker in *ORP Surgical*, though § 455(d)(4) treats spousal partnership income as the judge's own, even invoking that tainted affirmance as if it "cured" his order, though the conflict emerged only later.[5] Each dismissal insulated colleagues rather than applying the statute, entrenching conflict, not remedy.

Three judges, three conflicts, one statute ignored: § 455 requires vacatur, not excuses. Woods entrenched this misconduct by issuing an ultra vires § 1915(a)(3) certification branding the Rule 60(b)(6) motion "not in good faith," striking at

---

[3] DePuy wrongly argues Liman had "no conflict" because HOC was "the only defendant." Dkt-396 at 18 n.3. Liman's stock disqualified him under § 455(b)(4), and HOC's limitations ruling (Dkts-351, 352) extended to DePuy. Reassignment of both judges confirms § 455(a ) real appearance, not hypothetical (November 7, 2024).

[4] The Arnold & Porter/J&J tie was not "bald." (Dkt-46.1 p 8 at n.6). It was supported by A&P's website (Dkt.-364 Exhib-3) touting J&J as a marquee client and federal dockets showing concurrent J&J defenses (MDL 2738). Woods denied hearing (Dkt-396 at 13) ignoring evidence and Aaron's reassignment. Then claimed record "undisputed." (Dkt-396 at 25).

[5] § 455(d)(4) treats spousal partnership income as the judge's own. Seyfarth concurrently represented HOC/Stryker in *ORP Surgical*; Appellees disclosed Raggi's conflict (Dkt-46 at 15). Woods contrary view (Dkt-396 at 18) disregards statute and Judicial Conference guidance.

Plaintiff as a pro se litigant even after both conflicted judges were reassigned and Liman's recusal was admitted in substance but never made of record. That maneuver chilled access and tainted the record with prejudice.

Woods sought to gag review; Section 1915 governs fees, not jurisdiction, and a conflicted judge cannot immunize his own order. Woods's order entrenched, not cured, misconduct. What Appellees defend as "Opinion" is a product of concealment and falsification, and cannot stand under *Liljeberg* and *Hazel-Atlas*.

### F. Upcoming Appeal on Woods Order: Attempt to Foreclose Review

Plaintiff filed a timely Notice of Appeal on June 17, 2025 (Dkt-397), designating Woods' June 12, 2025, order (Dkt-396) alone. Appellees responded with a Motion to Dismiss/Affirm, seeking to block briefing and insulate the conflicted order.

One financially conflicted judge taints the tribunal (§ 455). Here, there were three: Liman, Aaron, and Raggi, and now a fourth, Woods, who entrenched the taint by mislabeling administrative reassignment as "recusal," falsifying the docket, and attempting to gag appellate review with an ultra vires § 1915(a)(3) certification. Structural error is never harmless; correction is mandatory.

This upcoming appeal, confined to Woods' June 12, 2025, order, requires its first review by this Court. Federal Rule of Appellate Procedure 3(c)(4) provides

that an appeal "encompasses only the judgment or order designated." Plaintiff

designated Dkt-396. Denial of Rule 60(b)(6) relief is, by longstanding authority, an

independently appealable final judgment under 28 U.S.C. § 1291.

## III. <u>ARGUMENT</u>

### A. The New Appeal Will Present Substantial, Non-Frivolous Issues

Appellees' claim that this unwritten appeal "lacks any arguable basis in fact

or law" collapses before briefing. Pre-labeling the appeal "frivolous" is not law; it

is a tactic to foreclose scrutiny of conflicts never reviewed. Issues here are neither

fanciful nor repetitive; they go to the heart of judicial legitimacy.

Three judges sat financially conflicted (Liman, Aaron, Raggi), and now, a

fourth (Woods) entrenched those conflicts, denying relief by record falsification,

mislabeling reassignment as "recusal," and attempting to gag review under § 1915.

Structural disqualification error is never harmless. *Williams v. Pennsylvania*, 579

U.S. 1, 8–9 (2016); *Nguyen v. United States*, 539 U.S. 69, 81 (2003). Under

*Liljeberg*, vacatur is mandatory where § 455 is violated to preserve confidence in

the judiciary.

Woods compounded misconduct by collapsing distinct orders into a closed

2024 appeal, contrary to FRAP 3(c)(4). Jurisdiction flows from notice of appeal

(Dkt-397), not speculation or retroactive collapse. *Griggs v. Provident Consumer*

*Disc. Co.*, 459 U.S. 56, 58 (1982). Appellees' attempt to pre-brand this jurisdictional challenge as "frivolous" underscores vital appellate review.

## B. De Novo Review Cannot Cure Conflicts

Appellees recycle *ExxonMobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th 163 (2d Cir. 2022), to argue that Second Circuit affirmance "cured" Liman's and Aaron's conflicts. But *ExxonMobil* involved insurance consolidation, not judicial disqualification. The Supreme Court has made clear: conflicts cannot be washed away by later review. *Liljeberg*, 486 U.S. at 864–65. The appearance standard of § 455(a) exists precisely because the public cannot be asked to trust conflicted rulings "cured" after the fact. Labeling Plaintiff's argument here "frivolous" before briefing a way to dodge *Liljeberg*.

## C. Judge Raggi's Conflict Was Real, Not "Fanciful"

Appellees minimize Raggi's household income from Seyfarth Shaw by claiming *ORP Surgical* litigation was "unrelated." Section 455(a) turns on appearance, not subject matter. Judicial Conference guidance treats spousal partnership income as the judge's own, § 455(d)(4); Seyfarth was *concurrently* representing HOC/Stryker. Appellees disclosed Raggi's conflict (Dkt-46 at 15). Dismissing it as "fanciful" rewrites the statute. Pre-branding this conflict before

briefing "frivolous" and claiming it "cured" before it was revealed, by the prior and unrelated appeal, illustrates the weakness of Appellees' posture.

### D. The Falsified Record Shows Conflicts Acknowledged by Reassignment, Not "Recusal"

Woods and Appellees repeatedly branded Liman "Recused Judge," without any § 455 recusal order.[6] This coordinated misrepresentation is fraud on this Court, a maneuver to shield conflicted rulings.

This was no error. Woods and Appelles used "Recused Judge" label more than seventy-five times, despite the absence of § 455 recusal order. Liman was never recused. Liman and Aaron were administratively reassigned on November 7, 2024, after Plaintiff exposed conflicts on October 31, 2024, confirming § 455(a)'s appearance standard had been triggered.

By falsifying the docket branding Liman "Recused Judge," Woods and Appellees fraudulently misled this Court to believe conflicts were cured, then both denied vacatur. Judicial estoppel bars Appellees from invoking the "Recused" label while resisting its mandated remedy, vacatur. See *Fishon v. Peloton Interactive*,

---

[6] Docket contains no order under 28 U.S.C. § 455 recusing Liman regardless of Woods and Appellees' agreement he's "Recused Judge." (Dkt 396, App. Dkt 46 ) Both Liman and Aaron were administratively reassigned November 7, 2024, not statutory recusal and does not preserve their prior rulings.

*Inc.,* 620 F.Supp. 3d 80 (S.D.N.Y. 2022). Once reassignment confirmed appearance of impropriety, vacatur became mandatory.

Woods speculated Liman "may not have known" his J&J conflict (Dkt-396 at 18 n.4), both irrelevant and not supported by the record. Section 455(b)(4) makes knowledge immaterial, and Rule 26.1 disclosures (Dkt-38, Mar. 8, 2019) identified DePuy as a J&J subsidiary. Judicial Conference Advisory Opinion No. 106 confirms: even a single share in a parent or subsidiary compels recusal.

This Court should not permit its record to be poisoned by falsification. Fraud on the court is never harmless. The "Recused Judge" narrative was not a misstatement but deliberate statute evasion. Conflicted rulings may not stand, and concealment only heightens duty of vacatur.

### E. Defense Misconduct Compounded Judicial Misconduct

DePuy's counsel mishandled Plaintiff's explant, submitted misleading photos blaming her, and misrepresented a conflicted expert, all excused by Aaron while imposing truncated discovery. Dkt-264 at 2-3. Stryker's counsel secretly acquired and withheld Plaintiff's metallosis pathology in violation of HIPAA and Fla. Stat. § 395.3025. (DE 296). Sanctions were again denied by Aaron.

### F. Woods § 1915 Certification Was Ultra Vires

Appellees tout Woods "not in good faith" certification, but § 1915 governs

fees, not jurisdiction. *Johnson v. United States*, 352 U.S. 565, 566 (1957), and

*Coppedge v. United States*, 369 U.S. 438, 445 (1962), hold doubts about

appealability must be resolved in Appellant's favor. The misuse was doubly

improper: § 1915(a)(3) is irrelevant to a fee-paid litigant with no pending IFP

application. By inserting a gratuitous 'not in good faith' label, Woods wielded a

statute reserved for indigent-access cases as a weapon to stigmatize a paying pro-se

appellant "frivolous." "No man can be a judge in his own case." *In re Murchison*,

349 U.S. 133, 136 (1955).

## G. The Abuse-of-Process Charge Is Projection

Appellees cite *Der-Rong Chour v. INS*, 578 F.2d 464 (2d Cir. 1978),

accusing Plaintiff of "abuse of process," a charge projecting their own misconduct:

suppressed evidence, concealed conflicts, and falsified docket. Plaintiff seeks only

impartial adjudication, precisely what § 455 and Rule 60(b)(6) safeguard.

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) confirms

fraudulent judgments cannot stand. This case is not about "persistent frivolity" but

persistent concealment, and manufactured, "undisputed" record (Dkt-351:22).

This is the first appeal from Dkt-396, raising conflicts never reviewed on

their merits. The law commands vacatur when impartiality is compromised. What

Appellees call "fanciful" is the principle "justice must satisfy the appearance of justice." *Liljeberg*, 486 U.S. at 864; *Murchison*, 349 U.S. at 136.

## IV. STANDARD OF REVIEW

### A. Jurisdiction and Structural Error

Denial of Rule 60(b)(6) relief is a final, independently appealable judgment under 28 U.S.C. § 1291. *Standard Oil Co. v. United States*, 429 U.S. 17, 18–19 (1976); *Browder v. Dir., Dep't of Corr.*, 434 U.S. 257, 263 n.7 (1978). Plaintiff noticed only appeal of Dkt-396 (Dkt-397, June 17, 2025). Regardless of speculation, Federal Rule of Appellate Procedure 3(c)(4) is explicit: appeal "encompasses only the judgment or order designated." Jurisdiction flows from notice of appeal, not speculation. *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).

This is the first appeal from ECF 396. It presents non-frivolous issues at the core of judicial legitimacy: undisclosed financial conflicts, a falsified "recusal" narrative, suppression of discovery, and defense misconduct. Where disqualification is at issue, the law is uncompromising: "justice must satisfy the appearance of justice." *In re Murchison*, 349 U.S. 133, 136 (1955). Structural error is never harmless. *Williams v. Pennsylvania*, 579 U.S. 1, 8–9 (2016); *Nguyen v.*

*United States*, 539 U.S. 69, 81 (2003). *Liljeberg*, requires vacatur whenever § 455 is violated.

Woods branded this paid appeal "not in good faith" under § 1915(a)(3) (Dkt-396 at 25–26), slandering it because Plaintiff is pro se and seeking to render it worthless. Yet Liman and Aaron's immediate reassignment already confirmed § 455(a)'s appearance of impropriety, and Woods himself acknowledged Liman should have recused. Instead of enforcing mandatory vacatur, he misused § 1915 to protect himself. That certification was meaningless procedurally because Appellant had already paid the fee. Its only function was symbolic, to brand this paid appeal as 'indigent and frivolous' in the record, deterring scrutiny of conflicts." Only this Court, not the conflicted judge under review, may decide frivolousness. *Johnson*; *Coppedge*; *Anders v. California*, 386 U.S. 738, 744 (1967). Woods' misused *Coppedge*, which guarantees appellate access, not preclusion. As *Murchison* holds, "No man can be a judge in his own case," 349 U.S. at 136.

### B. Appellees' Cited Authorities Are Inapposite

Appellees rely on cases that do not apply.

- *Pillay v. INS*, 45 F.3d 14 (2d Cir. 1995), *Monsalve*, *Torres*, and similar cases involved prisoner or fee-screening appeals where no colorable issue remained; they say nothing about Rule 60(b)(6) relief from judgments tainted by judicial disqualification.

- *ExxonMobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th 163 (2d Cir. 2022), was an insurance-consolidation case, irrelevant here. Judicial conflicts cannot be "cured" by affirmance. *Liljeberg* requires vacatur to preserve confidence; conflicts revealed after judgment cannot be retroactively cured. 486 U.S. at 864–65.

- *Ackermann v. United States*, 340 U.S. 193 (1950), bars relitigation of tactical choices after fair judgment, not concealed conflicts revealed post-judgment. Disclosure after judgment triggers *Liljeberg*, not *Ackermann*.

- *Torres v. Senkowski*, 316 F.3d 147 (2d Cir. 2003), and other habeas cases cannot override *Standard Oil* and *Browder*, which squarely hold denial of Rule 60(b) relief is independently appealable under § 1291.

- *Johnson*, *Coppedge*, *Anders*, and *Neitzke v. Williams*, 490 U.S. 319 (1989), are misused. Those cases protect appellate rights, not judicial conflicts. *Coppedge* specifically resolves doubts in favor of appeal. None authorizes conflicted judges to insulate their own orders.

- *Ben Zvi*, 242 F.3d 89 (2d Cir. 2001), confirms concealed defects remain open; mandate cannot cure them. Structural conflicts defy harmless-error review. *Williams*; *Nguyen*.

- *ORP Surgical, LLC v. Howmedica Osteonics Corp.*, No. 22-1430 (10th Cir. 2024), is dismissed as irrelevant, but § 455(a) turns on appearance, not subject. Judge Raggi's spousal income from Seyfarth, concurrent counsel to Stryker in *ORP*, created appearance Congress forbade.

Most importantly, Appellees ignore controlling authority: *Liljeberg*, *Williams*, *Nguyen*, and *Hazel-Atlas*. Fraudulent suppression of evidence compounded by undisclosed conflicts demands correction.

### C. Efficiency Arguments Cannot Trump Integrity

Appellees cite *Pillay*'s aside about "burgeoning dockets" and scarce resources. But the burden here stems not from Plaintiff's filings, but from

Defendants' concealment and conflicted rulings that followed. Had conflicts been disclosed and enforced when they arose, there would be no Rule 60(b) motion, no appeal from Dkt-396, and no need for this Court's review. Litigation costs cannot justify insulating fraud on the court. As Justice Brandeis warned, "[o]ur government is the potent, the omnipresent teacher." Excusing conflicts here would teach concealment is rewarded and impartiality is optional. The law requires the opposite.

## V. DISMISSAL WOULD ENTRENCH FRAUD: THIS APPEAL DEMANDS MERITS REVIEW

This case is not about "persistent frivolity." It is about fraud and a record built through judicial conflicts and defense misconduct. Rule 60(b)(6) addresses "extraordinary circumstances." *Standard Oil*. Those circumstances exist: suppressed discovery; financial entanglements of three judges; a fourth who entrenched them, and defense misconduct.

The law is uncompromising:

- One conflicted judge taints the tribunal; here, there were four. *Williams v. Pennsylvania*, 579 U.S. 1, 8–9 (2016).
- Concealed conflicts and suppressed evidence require vacatur. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864–65 (1988); *Nguyen v. United States*, 539 U.S. 69, 81 (2003).
- Fraud on the court vitiates even final judgments. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944); *Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972).

- Declaring record "undisputed" after suppressing evidence that would create disputes is structural fraud, not harmless error. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Taylor v. Illinois*, 484 U.S. 400, 411 (1988).

Dkt-396 entrenched, rather than cured, these defects. Letting it stand would erode judicial integrity. *Liljeberg* mandates vacatur "to preserve public confidence in the integrity of the judicial process." 486 U.S. at 865.

## VI. CONCLUSION

WHEREFORE, the appellant Jodi Rouviere requests this Court to DENY Appellees' Motion for dismissal or summary affirmance based on the foregoing facts and law; and enter an order DENYING same and granting Appellant other relief this Court deems proper and just under the circumstances.

September 22, 2025
Miami, Florida

Respectfully submitted,

*//ss// Jodi Rouviere*

Jodi Rouviere
10950 Southwest 84th Court
Miami, FL 33156-3526
(305)608-8076
jodi.jtm@gmail.com
*Appearing pro se*

## **CERTIFICATE OF COMPLIANCE**

I certify that, pursuant to Federal Rules of Appellate Procedure 32(a) and

Second Circuit Rule 32.1(a), the foregoing Memorandum of Law in Opposition to

Appellees' Joint Motion for Summary Affirmance and/or Dismissal of Appeal is

proportionately spaced, has a typeface of 14 points or more, and, not counting the

items excluded by Federal Rule of Appellate Procedure 32(f), contains 4,925

words.


Dated: September 22, 2025                    *//ss// Jodi Rouviere*

                                             Jodi Rouviere

                                             10950 Southwest 84th Court

                                             Miami, FL 33156-3526

                                             (305)608-8076

                                             jodi.jtm@gmail.com

                                             *Appearing Pro se*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 22, 2025, the foregoing documents was

filed with the Clerk of the Court and served in accordance with the Federal Rules

of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern

District's Rules on Electronic Service upon the following parties and participants:


Paul E. Asfendis
GIBBONS, P.C.
One Pennsylvania Plaza
New York, NY 10119


Joseph G. Eaton
J.T. Larson
Barnes & Thornburg, LLP
11 South Meridian Street
Indianápolis, Indiana 46204


_//s// Jodi Rouviere_____
Jodi Rouviere, pro se

# EXHIBIT 1



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
OFFICE OF THE CLERK
500 PEARL STREET
NEW YORK, NEW YORK 10007

RUBY J. KRAJICK
CLERK OF COURT

February 25, 2022

BY ECF AND OVERNIGHT MAIL

Aaron Dunbar
Kline & Specter, PC
1525 Locust Street
Philadelphia, PA 19103

Christy D. Jones
Butler, Snow, O'Mara, Stevens & Canada, PLLC
AmSouth Plaza
210 East Capitol Street, Suite 1700
Jackson, MS 39201

    Re:  1:20-cv-04330-LJL, <u>Reiss et al v. Ethicon, Inc. et al,</u>
        1:20-cv-04332-LJL, <u>Roman et al v. Ethicon, Inc. et al</u>

Dear Counsel,

  I have been contacted by Judge Lewis J. Liman, U.S.D.J., who presided over the above-mentioned cases.

  Judge Liman informed me that it has been brought to his attention that while he presided over the case his wife owned stock in Johnson & Johnson. His wife's stock ownership is imputed to Judge Liman. That ownership of stock neither affected nor impacted his decisions in this case. However, that stock ownership would have required recusal under the Code of Conduct for United States Judges, and thus, Judge Liman directed that I notify the parties of the potential conflict.

Notice to Counsel of Record
February 25, 2022
Page 2

Advisory Opinion 71, from the Judicial Conference Codes of Conduct Committee, provides the following guidance for addressing disqualification that is not discovered until after a judge has participated in a case:

> [A] judge should disclose to the parties the facts bearing on disqualification as soon as those facts are learned, even though that may occur after entry of the decision. The parties may then determine what relief they may seek and a court (without the disqualified judge) will decide the legal consequence, if any, arising from the participation of the disqualified judge in the entered decision.

Although Advisory Opinion 71 contemplated disqualification after a Court of Appeals oral argument, the Committee explained "[s]imilar considerations would apply when a judgment was entered in a district court by a judge and it is later learned that the judge was disqualified."

If you wish to respond to the disclosure of a potential conflict in this matter, please file your response in the above-named case. Any response will be considered by another judge of this court without the participation of Judge Liman.

Sincerely,

Ruby J. Krajick
Clerk of Court

cc: Hon. Lewis J. Liman, U.S.D.J.

# EXHIBIT 2

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com.

https://www.wsj.com/us-news/law/fallout-from-judges-financial-conflicts-spreads-to-appeals-courts-11646155384

EXCLUSIVE   LAW

# Fallout From Judges' Financial Conflicts Spreads to Appeals Courts

Cases involving StarKist, Bank of America and Cisco are among those reviewed

By *James V. Grimaldi* Follow , *Joe Palazzolo* Follow *and Coulter Jones* Follow

*Updated* March 1, 2022 3:04 pm ET



Federal appeals courts now have to decide whether affected judges' conflicts were great enough to warrant wiping out their rulings. The Walter E. Hoffman U.S. Courthouse in Norfolk, Va. PHOTO: PICTOMETRY

Fallout from federal judges violating financial-conflict laws is spreading to appeals courts across the nation.

In San Diego, StarKist Tuna is seeking to derail a lawsuit alleging a price-fixing conspiracy costing buyers more than $1 billion. In New York, consumer lawyers want to revive a dismissed case alleging America's largest banks defrauded investors out of more than $7

billion in bond deals. In Virginia, Cisco Systems Inc. is challenging a $1.9 billion patent-infringement judgment.

In each case, federal judges had failed to properly recuse themselves after having financial ties to litigants in violation of a 48-year-old law. These violations are having real-world implications for people and companies who resolve disputes in court. The appeals courts now have to decide whether the conflicts were enough to warrant wiping out the rulings by the conflicted judges.

Overall, at least 55 cases overseen by judges with recusal violations have been appealed, reconsidered or reassigned to new judges. How newly assigned judges or appellate courts resolve the conflicts could affect public perception of the judicial system, legal experts said. A Wall Street Journal investigation last year revealed that more than 130 judges violated the financial-conflict law.



Judge Janis Sammartino directed a clerk to file notices of financial conflicts in 140 cases. ILLUSTRATION: ART LIEN FOR THE WALL STREET JOURNAL

In these contested cases, appellate judges will be faced with deciding between fairness and efficiency, legal experts said. Litigants crying foul are asking that judgments be vacated. The other sides argue that the judges' conflicts amounted to minor errors and that rehearing a case will cost time and money.

Vacating a judgment "is inconvenient, it's inefficient,

it's time-consuming," said James Sample, a Hofstra University law professor. Yet inconvenience and inefficiency are "problems that the judges themselves have created," he said.

In considering the recusal violations, a 1988 U.S. Supreme Court ruling requires courts to consider the risk of injustice to litigants if they vacate rulings, the risk of injustice in other cases and the risk of undermining the public's confidence in the judicial process.

Litigants in the appeals cases have leaned on the ruling, each side arguing that the test favors their desired outcome.

In the tuna fish price-fixing case, StarKist, Bumble Bee and Chicken of the Sea were accused by retail and commercial buyers of conspiring to inflate prices. The cases were filed as StarKist and Bumble Bee pleaded guilty to federal charges of conspiring to fix tuna prices, with fines of $100 million for StarKist and $25 million for Bumble Bee.

Judge Janis Sammartino in 2019 had sided with the plaintiffs in certifying a class action, which was overturned by a three-judge panel in April 2021 for abusing her discretion in how she certified the classes.

As the Ninth U.S. Circuit Court of Appeal began hearing arguments, the Journal reported that Judge Sammartino's husband owned shares of companies of two members of the plaintiff's class, Target Corp. ($15,001 to $50,000) and Sysco Corp (less than $15,000).

StarKist filed a motion arguing that Judge Sammartino's recusal violation was yet a further reason to throw out her class certification in the case.

"Her family held those interests for years while she was presiding over this case—including some throughout the three-day hearing on class certification—without ever disclosing them to Defendants," argued lawyers for StarKist.



StarKist Tuna is seeking to derail a lawsuit alleging a price-fixing conspiracy costing buyers more than $1 billion. PHOTO: STEPHANIE STRASBURG/PITTSBURGH POST-GAZETTE/ASSOCIATED PRESS

Lawyers for the class said StarKist's objection should be rejected. "StarKist now seeks a 'do over' despite years of effort by the parties, the district court, and the Ninth Circuit—supported solely by atmospherics created by the Wall Street [Journal] article and a patently insufficient consideration of the record that is relevant to this case," the attorneys said in reply.

A decision from the appeals court is pending.

Judge Sammartino, an appointee of President George W. Bush, directed a clerk to file notices of financial conflicts in 140 cases after the Journal contacted her. She didn't respond to a phone message left with her chambers.

In another high-stakes appeal in New York, the Journal identified a financial conflict involving federal Judge Lewis Liman, an appointee of President Donald Trump, in a large antitrust class action.

The 2020 suit against 10 banks seeks to recover damages that plaintiffs say exceed $10 billion for overcharging them on bond purchases. Judge Liman didn't disclose that a family member owned as much as $15,000 in Bank of America, a defendant. Last year, Judge Liman granted the motion of defendants including Bank of America to dismiss in the case with prejudice.

In a court notice filed Friday, the court clerk wrote of Judge Liman that his wife's "ownership of stock neither affected nor impacted his decisions in this case. However, that stock ownership would have required recusal."

A lawyer for the plaintiffs said they would consider whether to seek relief in the case; they are set to file briefs on the appeal next week.

Judge Liman didn't respond to a request for comment. The bank case is one of 13 lawsuits in which the judge, after an inquiry last month from the Journal, asked a clerk to file notices to parties in those cases saying he should have disqualified himself.

Judge Henry Morgan in Norfolk, Va., discovered his own financial conflict in a patent-infringement case that Centripetal Networks Inc., a Virginia company, filed against Cisco Systems.

After a bench trial but before issuing an opinion, Judge Morgan disclosed that he had learned that his wife held $4,700 of Cisco stock during the trial.



Judge Henry Morgan was required by law to recuse himself or his wife sell off her Cisco shares for him to continue to hear a case, Cisco Systems argued in legal briefs.
ILLUSTRATION: ART LIEN FOR THE WALL STREET JOURNAL

Centripetal raised no objection to him remaining on the case, but Cisco requested that Judge Morgan step aside. Though he hadn't said how he would rule in the case, Judge Morgan had asked the parties for information about damages, a good omen for Centripetal.

At a hearing, the judge said he would direct his lawyer to place the shares in blind trust instead of asking his wife to sell them off. He said he worried that dumping the stock ahead of his opinion on the merits of the case could look bad if he ruled against Cisco.

"I was concerned that, to the extent that the Court's ruling might have an adverse effect on the stock price—I don't know if it will or not—that that would be defeating the very purpose of the [ethics] Rules," Judge Morgan explained in a September 2020 hearing, according to a transcript.

He denied Cisco's recusal motion in October 2020 and soon found that the company infringed Centripetal's patents, awarding $1.9 billion in damages.

Cisco appealed to the U.S. Court of Appeals for the Federal Circuit in Washington, D.C. The company has argued in its briefs that federal

law required Judge Morgan to recuse or his wife to sell off her Cisco shares for him to continue to hear the case. Lawyers for Centripetal said in their briefs that Judge Morgan made an ethical decision in moving the Cisco shares into a blind trust.

The appellate court has yet to issue a decision.

Lawyers for Centripetal and Cisco declined to comment. Judge Morgan, an appointee of President George H.W. Bush, didn't respond to a request for comment sent to his chambers.

**Write to** James V. Grimaldi at james.grimaldi@wsj.com, Joe Palazzolo at joe.palazzolo@wsj.com and Coulter Jones at Coulter.Jones@wsj.com

*Appeared in the March 2, 2022, print edition as 'Judicial Conflicts Spread to Appeals'.*

**Further Reading**

OPINION **The Supreme Court's Good Sense on Parental Rights and Porn Sites**

OPINION **When Liberals Hated National Injunctions**

OPINION **The Supreme Court Kills 'Universal' Injunctions**

# EXHIBIT 3

| AO-10T<br>Rev. 03/2023 | **FINANCIAL DISCLOSURE<br>PERIODIC TRANSACTION REPORT** | *Report Required by the Ethics in<br>Government Act of 1978<br>(5 U.S.C. §§ 13101-13111)* |
|---|---|---|

| *1. First Name | *2. Middle Initial | *3. Last Name | 4. Suffix |
|---|---|---|---|
| Lewis | J | Liman | |

| *5. Title | *6. District/Court/Unit | *7. Circuit |
|---|---|---|
| U.S. District Judge | NEW YORK SOUTHERN | 02 |

| 8. Report Type | 9. Calendar Year | *10. Date Filed | | 11. Check box if amending prior report and enter date of prior submission. |
|---|---|---|---|---|
| Periodic Transaction Report | 2025 | 03/17/2025 | | |

| *12. Date of First Transaction on this Report | *13. Date of Last Transaction on this Report |
|---|---|
| 03/10/2025 | 03/10/2025 |

**TRANSACTIONS** *Any purchase, sale, or exchange that exceeds $1,000 in stocks, bonds, commodities futures, and other securities (Includes those of spouse and dependent children)*

| | A.<br>Description of Assets | B.<br>Transaction Type | C.<br>Date of Transaction | D.<br>Date Notified of Transaction | E.<br>Amount of Transaction |
|---|---|---|---|---|---|
| 1. | Johnson & Johnson (JNJ) | Sold | 03/10/2025 | 03/11/2025 | $100,001 - $250,000 |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| 11. | | | | | |
| 12. | | | | | |
| 13. | | | | | |
| 14. | | | | | |
| 15. | | | | | |

**TRANSACTIONS** *Any purchase, sale, or exchange that exceeds $1,000 in stocks, bonds, commodities futures, and other securities (Includes those of spouse and dependent children)* Page 2 of 5

| First Name Lewis | Middle Initial J | | Last Name Liman | Suffix |
|---|---|---|---|---|
| A.<br>Description of Assets | B.<br>Transaction Type | C.<br>Date of Transaction | D.<br>Date Notified of Transaction | E.<br>Amount of Transaction |
| 16. | | | | |
| 17. | | | | |
| 18. | | | | |
| 19. | | | | |
| 20. | | | | |
| 21. | | | | |
| 22. | | | | |
| 23. | | | | |
| 24. | | | | |
| 25. | | | | |
| 26. | | | | |
| 27. | | | | |
| 28. | | | | |
| 29. | | | | |
| 30. | | | | |
| 31. | | | | |
| 32. | | | | |
| 33. | | | | |
| 34. | | | | |
| 35. | | | | |
| 36. | | | | |
| 37. | | | | |
| 38. | | | | |
| 39. | | | | |
| 40. | | | | |

**TRANSACTIONS** *Any purchase, sale, or exchange that exceeds $1,000 in stocks, bonds, commodities futures, and other securities (Includes those of spouse and dependent children).*    *Page 3 of 5*

| First Name Lewis | Middle Initial J | | Last Name Liman | | Suffix |

| A.<br>Description of Assets | B.<br>Transaction<br>Type | C.<br>Date of<br>Transaction | D.<br>Date Notified<br>of Transaction | E.<br>Amount<br>of Transaction |
|---|---|---|---|---|
| 41. | ▼ | | | |
| 42. | ▼ | | | |
| 43. | ▼ | | | |
| 44. | ▼ | | | |
| 45. | ▼ | | | |
| 46. | ▼ | | | |
| 47. | ▼ | | | |
| 48. | ▼ | | | |
| 49. | ▼ | | | |
| 50. | ▼ | | | |
| 51. | ▼ | | | |
| 52. | ▼ | | | |
| 53. | ▼ | | | |
| 54. | ▼ | | | |
| 55. | ▼ | | | |
| 56. | ▼ | | | |
| 57. | ▼ | | | |
| 58. | ▼ | | | |
| 59. | ▼ | | | |
| 60. | ▼ | | | |
| 61. | ▼ | | | |
| 62. | ▼ | | | |
| 63. | ▼ | | | |
| 64. | ▼ | | | |
| 65. | ▼ | | | |

**TRANSACTIONS** *Any purchase, sale, or exchange that exceeds $1,000 in stocks, bonds, commodities futures, and other securities (Includes those of spouse and dependent children).* *Page 4 of 5*

| First Name Lewis | | Middle Initial J | | Last Name Liman | Suffix |
|---|---|---|---|---|---|
| **A.** Description of Assets | **B.** Transaction Type | **C.** Date of Transaction | **D.** Date Notified of Transaction | **E.** Amount of Transaction | |
| 66. | ▼ | | | | |
| 67. | ▼ | | | | |
| 68. | ▼ | | | | |
| 69. | ▼ | | | | |
| 70. | ▼ | | | | |
| 71. | ▼ | | | | |
| 72. | ▼ | | | | |
| 73. | ▼ | | | | |
| 74. | ▼ | | | | |
| 75. | ▼ | | | | |
| 76. | ▼ | | | | |
| 77 | ▼ | | | | |
| 78. | ▼ | | | | |
| 79. | ▼ | | | | |
| 80. | ▼ | | | | |
| 81. | ▼ | | | | |
| 82. | ▼ | | | | |
| 83. | ▼ | | | | |
| 84. | ▼ | | | | |
| 85. | ▼ | | | | |
| 86. | ▼ | | | | |
| 87. | ▼ | | | | |
| 88. | ▼ | | | | |
| 89. | ▼ | | | | |
| 90. | ▼ | | | | |

| First Name  Lewis | Middle Initial  J | Last name  Liman | Suffix |
|---|---|---|---|

## ADDITIONAL INFORMATION OR EXPLANATIONS

CERTIFICATION.
*I certify that all information given above (including information pertaining to my spouse and minor or dependent children, if any) is accurate, true, and complete to the best of my knowledge and belief, and that any information not reported was withheld because it met applicable statutory provisions permitting non-disclosure.*

NOTE: *ANY INDIVIDUAL WHO KNOWINGLY AND WILLFULLY FALSIFIES OR FAILS TO FILE THIS REPORT MAY BE SUBJECT TO CIVIL AND CRIMINAL SANCTIONS (5 U.S.C. § 13106)*

**\*SIGNATURE:**

s/ Lewis J Liman

Committee on Financial Disclosure
Administrative Office of the United States Courts
Suite G-330
One Columbus Circle, N.E.
Washington, D.C. 20544